1  Monika Pleyer Lee (California Bar No. 117019)
   LEE LAW OFFICES
2  1700 South El Camino Real, Suite 450
   San Mateo, California 94402
3  Telephone: (650) 212-3400
   Facsimile: (650) 212-3414
4  monikalee@leelawllp.com
5
   Attorneys for Plaintiff
6  Sony Interactive Entertainment LLC
7
8
9                  UNITED STATES DISTRICT COURT
10                CENTRAL DISTRICT OF CALIFORNIA
11

12  SONY INTERACTIVE ENTERTAINMENT           Case No.:  5:18−cv−02141−JGB−KK
    LLC, a California limited liability company,
13                                            MEMORANDUM OF POINTS AND
                  Plaintiff,                  AUTHORITIES IN SUPPORT OF SONY
14                                            INTERACTIVE ENTERTAINMENT LLC'S
                  v.                          MOTION FOR ENTRY OF DEFAULT
15                                            JUDGMENT
16  ERIC DAVID SCALES (doing business as
    Blackcloak13),                            Date:    March 18, 2019
17                                            Time:    9:00 a.m.
                  Defendant.                  Dept.:   Courtroom 1
18
19
20
21
22
23
24
25
26
27
28

## Table of Contents

I.     INTRODUCTION .................................................................................................. 5

II.    FACTUAL BACKGROUND ................................................................................ 6

    A.    SIE, PS4 Consoles, and PS4 Video Games ............................................. 6

        1.    SIE's Copyrights in PS4 Video Games ......................................... 6

        2.    SIE's Technological Protection Measures ..................................... 7

    B.    Defendant's Unlawful Conduct ............................................................... 8

        1.    Defendant's PS4 Console No. 1 ..................................................... 8

        2.    Defendant's PS4 Console No. 2 ..................................................... 9

        3.    Other Illegal Conduct .................................................................. 10

III.   THE COURT MAY PROPERLY ENTER DEFAULT JUDGMENT AGAINST DEFENDANT SCALES AT THIS TIME ............................................................. 11

IV.    APPLICATION OF THE EITEL FACTORS WARRANTS ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANT SCALES ............................. 12

    A.    SIE Would Be Prejudiced if a Default Judgment Were Not Entered ............ 12

    B.    The Complaint States Claims Against Defendant for Copyright Infringement and Violation of the DMCA ............................................. 12

        1.    Copyright Infringement, 17 U.S.C. § 501 *et seq*. .............................. 13

        2.    Violation of the DMCA, 17 U.S.C. § 1201 *et seq*. ............................ 15

    C.    The Amount of Money at Stake ............................................................ 17

    D.    No Possibility of a Dispute Concerning Material Facts ............................ 17

    E.    Default Was Not the Result of Excusable Neglect ................................... 17

    F.    The Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiffs' Right to Relief .................................................................... 18

V.     REMEDIES ....................................................................................................... 18

    A.    Permanent Injunction .......................................................................... 18

        1.    Public Interest ............................................................................ 18

        2.    Irreparable Harm and Lack of Adequate Remedies at Law ............... 19

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION FOR ENTRY OF DEFAUL JUDGMENT Case No.:5:18–cv–02141–JGB–KK

|  | 3. | Balance of Hardships | 20 |
| B. | Damages | | 21 |
| C. | Attorneys' Fees and Costs | | 23 |
| VI. | CONCLUSION | | 23 |

**Cases**

*Amini Innovation Corp. v. KTY Int'l. Mktg.,* 768 F. Supp. 2d 1049 (C.D. Cal. 2011) .................... 13

*Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240 (3rd Cir.1983) ............................ 20

*Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997) ........................................ 21

*Craigslist, Inc. v. Kerbel*, 2012 U.S. Dist. LEXIS 108573 (N.D.Cal. Aug. 2, 2012) ...................... 24

*Craigslist, Inc. v. Naturemarket, Inc*., 694 F. Supp. 2d 1039 (N.D. Cal. 2010) .............................. 23

*Danning v. Lavine,* 572 F.2d 1386 (9th Cir.1978)............................................................................. 13

*Disney Enter's. v. VidAngel, Inc*., 869 F.3d 848 (9th Cir. 2017) ..................................................... 20

*DR JKL Ltd. v. HPC IT Educ. Ctr*., 749 F. Supp. 2d 1038 (N.D. Cal. 2010)............................ 12, 13

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006) ............................................................... 19

*eBay, Inc. v. Bidder's Edge, Inc*., 100 F.Supp.2d 1058 (N.D.Cal.2000)........................................... 20

*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986) ............................................................................... 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340 (1991).................................................... 14

*Geddes v. United Fin. Grp.*, 559 F.2d 557 (9th Cir. 1977) .............................................................. 14

*Golan v. Holder*, 565 U.S. 302 (2012).............................................................................................. 20

*Jackson v. Sturkie*, 255 F. Supp. 2d 1096 (N.D. Cal. 2003) ...................................................... 20, 22

*Landstar Ranger, Inc. v. Parth Enterprises, Inc*., 725 F. Supp. 2d 916 (C.D. Cal. 2010) .............. 13

*MAI Sys. Corp. v. Peak Comput., Inc*., 991 F.2d 511 (9th Cir. 1993) ............................................. 20

*MDY Industries, LLC v. Blizzard Entertainment, Inc*., 629 F.3d 928 (9th Cir. 2010)..................... 16

*Microsoft Corp. v. Nop*, No. Civ. S-07-1276 MCE DAD, 2008 U.S. Dist. LEXIS 18727
(E.D. Cal. March 11, 2008)........................................................................................................... 20

*Nat'l Football League v. McBee & Bruno's, Inc*., 792 F.2d 726 (8th Cir.1986)............................... 20

*PepsiCo, Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal 2002) ......................................... 13

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir.2003)............................................................... 14, 15

*Sony Comput. Entm't Am., Inc. v. Divineo, Inc.,* 457 F. Supp. 2d 957 (N.D. Cal. 2006)................. 23

*Sony Comput. Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068 (N.D. Cal. 2005) ...................... 23

*Stockwire Research Grp., Inc. v. Lebed,* 577 F. Supp. 2d 1262 (S.D. Fla. 2008) ............................ 24

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir.1987) ................................ 12, 14

*Triad Sys. Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330 (9th Cir.1995) .......................... 21

*Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004) ..................... 21

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012) ............................. 18

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) ............................................ 20

### Statutes

17 U.S.C. § 410(c) ........................................................................... 14

17 U.S.C. § 501 .............................................................................. 22

17 U.S.C. § 502(a) ........................................................................... 19

17 U.S.C. § 505 .............................................................................. 24

17 U.S.C. § 1201 ........................................................................ passim

17 U.S.C. § 1203 ........................................................................ passim

50 U.S.C. App. § 521 ......................................................................... 12

### Other Authorities

S.Rep. No. 105-190 (1998) .................................................................... 16

### Rules

Fed.R.Civ.P. 8(b)(6) ......................................................................... 12

Fed.R.Civ.P. 54(c) ....................................................................... 11, 18

Fed.R.Civ.P. 54(d)(1) ..................................................................... 5, 23

Fed.R.Civ.P. 55(a) ........................................................................... 11

Fed.R.Civ.P. 55(b) ........................................................................... 11

Fed.R.Civ.P. 55(b)(2) ........................................................................ 12

Local Rule of Court 55-1 ..................................................................... 11

Local Rule of Court 55-3 ..................................................................... 23

Local Rule of Court 54-4 .................................................................. 5, 23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION FOR ENTRY OF DEFAUL JUDGMENT Case No.:5:18−cv−02141−JGB−KK

## I.  INTRODUCTION

Defendant Eric David Scales ("Scales") advertises and sells "jailbroken" PlayStation®4 ("PS4") video game consoles on eBay. These "jailbroken" PS4 consoles are loaded with pirated (*i.e.*, unauthorized) copies of PS4 video games.  Defendant Scales also advertises on his website that he provides "jailbreaking" services.  "Jailbreaking" means circumventing the technological protection measures that prevent the playing of pirated copies of PS4 video games on PS4 consoles.  According to Defendant, people that own his "jailbroken" PS4 consoles can "stop buying games" because they can play pirated versions of the PS4 video games that are already loaded on his consoles or that can be downloaded from the internet.

Defendant's actions constitute (a) infringement of Plaintiff Sony Interactive Entertainment LLC's ("SIE") copyrights and (b) violations of the "trafficking" provision of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 ("DMCA").  SIE filed this action on October 5, 2018.  Defendant failed to respond to the Complaint, and the Clerk of this Court accordingly entered the default of Defendant Scales on December 6, 2018.

SIE now asks the Court to enter a default judgment as follows:

(a)  An award to SIE of:

(i)   Statutory damages in the amount of $16,800 pursuant to Section 1203(c)(3)(A) of the DMCA;

(ii)  $2,208 for reasonable attorneys' fees pursuant to Section 505 of the Copyright Act, Section 1203(b)(5) of the DMCA, and L.R. 55-3; and

(iii) Costs in the amount of $1,250 pursuant to Fed.R.Civ.P. 54(d)(1) and L.R. 54-4.

(b)  An Order permanently enjoining Defendant from further infringing SIE's copyrights in PS4 video games and from marketing, offering to sell, or selling on his website, on eBay, elsewhere on the internet, or anywhere else in the United States, devices, components, products or services that circumvent SIE's technological protection measures in PS4 consoles and PS4 video games, and ordering Defendant to turn over to SIE all "jailbroken" PS4 consoles and pirated PS4 video games in his possession.

Entry of a default judgment as requested by SIE is squarely supported by the facts and the applicable law.

## II. FACTUAL BACKGROUND

### A.      SIE, PS4 Consoles, and PS4 Video Games

SIE is a California limited liability company with its principal place of business in San Mateo, California.  SIE markets and sells, among other products and services, PS4 video game consoles and PS4 video games (*i.e*., video games compatible with the PS4 console).  The PS4 system features a computer hardware console and an associated handheld controller that consumers can use to, among other things, play PS4 video games.  The PS4 system has enjoyed great success throughout the United States and around the world.  Since the PS4 launched in 2013, over 80 million PS4 consoles have been sold worldwide.  Hundreds of different game titles of PS4 video games are available to play on the PS4 console.  Authorized PS4 video games typically sell for prices ranging between about $20.00 and $60.00 per game.  Complaint ("Compl.") ¶ 4, 6; Declaration of James Y. Leong in Support of SIE's Motion for Default Judgment, filed herewith ("Leong Decl.") ¶ 4.

### 1.      SIE's copyrights in PS4 video games

SIE and its Tokyo-based sister company Sony Interactive Entertainment Inc. ("SIEI") have produced, published, and distributed hundreds of different titles of PS4 video games. All of these video games consist of or include large amounts of creative audiovisual material, stories, characters, and other matter that are wholly original to SIE and SIEI and are subject to copyright.  SIE distributes authorized PS4 games in the United States in a hard disc format and in a digital format. Compl. ¶ 7; Leong Decl. ¶ 5; Declaration of Timothy Penge in Support of SIE's Motion for Default Judgment, filed herewith ("Penge Decl.") ¶ 4.

The U.S. Copyright Office has issued Copyright Registration Numbers to SIE and SIEI for numerous PS4 video games, including for the following game titles: (a) *HELLDIVERS* (U.S. Copyright Registration No. PA 2117608, registered to SIE);  (b) *Everybody's Golf* (U.S. Copyright Registration No. PA 2111899, registered to SIEI); and (c) *God of War* (U.S. Copyright Registration No. PA 2115052, registered to SIE).  SIE owns the copyrights in HELLDIVERS and *God of War*, and it is the exclusive licensee of the copyrights in *Everybody's Golf* in the United States under a license from SIEI, and it is authorized by SIEI to bring suit for infringement of those copyrights.  (Collectively, the PS4 video games for which SIE owns, or is the exclusive licensee in the United States of, all copyright

rights are sometimes referred to herein as "First-Party PS4 games"). SIE and SIEI have made, and continue to make, substantial investments in the design, development, testing, manufacturing, marketing and distribution of their First-Party PS4 video games. Compl. ¶¶ 7, 23; Leong Decl. ¶ 6 and **Exhibits A, B, C**.

In addition to publishing First-Party PS4 games, SIE has authorized and licensed certain third-party companies to publish PS4 video games ("Third-Party PS4 games").  These third-party publishers have published hundreds of different titles of PS4 video games.  SIE is the exclusive authorized distributor in the United States of digital versions of First-Party and Third-Party PS4 video games. Compl. ¶ 8; Leong Decl. ¶ 8.

All PS4 video games include copyrighted computer code known as PlayStation® Branding and Notices Software Program Code ("PS Program Code").  The PS Program Code is an original work of authorship constituting copyrightable subject matter.  The U.S. Copyright Office has issued Copyright Registration No. TX 8589872 for the PS Program Code to SIEI, and SIEI has granted SIE the exclusive right to use, license, and bring suit for infringement of, SIEI's copyrights in the PS Program Code in the United States. Compl. ¶¶ 7, 9, 28; Leong Decl. ¶ 9 and **Exhibit D**.

## 2.    SIE's Technological Protection Measures

Software piracy—the unauthorized copying and use of software—is an industry wide problem that is estimated to cost the software industry millions of dollars in lost revenue every year.  To guard against piracy of PS4 video game software, PS4 consoles and PS4 video games are designed and manufactured to include certain technological protection measures ("TPMs") embodied in the PS4 system, including but not limited to the encryption of the video game software.  These TPMs effectively prevent a PS4 console from playing any unauthorized, decrypted copy of a video game. The TPMs can be analogized to a gatekeeper:  the gatekeeper allows authorized copies of video games to pass, and thus be played, but blocks all unauthorized copies of video games from passing and being played. Compl. ¶¶ 10, 11; Penge Decl. ¶ 3.

By using these TPMs, SIE has been able to protect its exclusive rights to copy, sell, distribute and manufacture PS4 video games and to create derivative works.  In addition, SIE has been able to

1   protect its substantial investment in the development, creation, and distribution of the PS4 system and

2   PS4 game software.

3   **B.    Defendant's Unlawful Conduct**

4       Defendant has marketed, sold, and distributed "jailbroken" PS4 consoles that are primarily

5   designed or produced for the purpose of, and/or were marketed by Defendant for use in, circumventing

6   the PS4 system's TPMs.  The circumvention takes two forms.  One, Defendant's "jailbroken" PS4

7   consoles contain, on their internal hard drives, unauthorized digital copies of PS4 video games, each of

8   which circumvents the TPMs that protect the genuine PS4 video game with the same title.  Two, the

9   "jailbroken" PS4 consoles can be used to make and play copies of other pirated PS4 video games that

10  the owner of the console may be able to download from unauthorized sources on the internet.  Compl.

11  ¶¶12, 14, 16; Penge Decl. ¶¶ 6, 9, 12, 15.  SIE acquired two of the "jailbroken" PS4 consoles defendant

12  offered for sale through eBay. Compl. ¶¶ 14, 16; Leong Decl. ¶¶ 11, 12, 13, 14 and **Exhibits F, G, H,**

13  **and I.**

14  **1.    Defendant's PS4 Console No. 1**

15      In April 2018, Defendant—under the eBay handle "blackcloak13" —listed for sale on eBay a

16  "jailbroken" PS4 console that Defendant advertised as a "NEW JAILBROKEN MODDED PS4

17  console PLUS 63 full games plus 1."  A screenshot of Defendant's eBay listing in reproduced below:



27  In his eBay listing, Defendant stated that the "Jailbroken Modded PS4 console" is "FULLY

28  JAILBROKEN/MODDED," "COMES WITH MY CUSTOM PRINTED DETAILED

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION FOR ENTRY
OF DEFAUL JUDGMENT Case No.:5:18–cv–02141–JGB–KK

INSTRUCTIONS," will enable the purchaser "TO PLAY ANY GAME YOU WANT," comes with "65 GAMES INSTALLED TO GET YOU STARTED," and "IT'S TIME TO ENJOY ALL GAMES FREE." In addition, Defendant's eBay listing highlighted his website at "http://foxhoundoutfitters.wixsite.com/ps3-jailbreak-mods," through which he advertised that he could be contacted for help with jailbroken consoles. Compl. ¶ 13; Leong Decl. ¶ 11 and **Exhibit E**.

SIE purchased the jailbroken PS4 console described above from Defendant via eBay through an agent in April 2018. A package containing the jailbroken PS4 console, Serial Number MC613975030, was delivered to SIE's agent bearing the following return name and address: "Eric Scales, ▮▮▮ ▮▮▮▮▮▮▮▮▮ RCH Cucamonga, CA 91730." Compl. ¶ 14; Leong Decl. ¶ 12 and Exhibits **F** and **G.**

The hard drive of this PS4 console, Serial Number MC613975030, contains unauthorized digital copies of 68 PS4 video games, including unauthorized copies of PS4 video games titled *HELLDIVERS; Everybody's Golf; EA SPORTS UFC 2; FlatOut4: Total Insanity;* and *Frozen Free Fall: Snowball Fight.* Penge Decl. ¶ 5. Each of these 68 unauthorized copies of PS4 video games contains an unauthorized copy of the PS Program Code. Penge Decl. ¶ 6. The console was modified to enable the user to access and run certain "exploit" software code that, when run on the PS4 console, circumvents the TPMs that are designed to prevent the console from playing unauthorized copies of PS4 video games. The exploit enables this PS4 console sold by Defendant to play the unauthorized copies of the 68 PS4 video games that are contained on its hard drive. Penge Decl. ¶ 8.

This jailbroken PS4 console, Serial Number MC613975030, also can be used to make digital copies of and to play additional unauthorized PS4 video games that the purchaser may be able to find from unauthorized sources on the internet. Included with the console was a set of instructions that provides, among other things, directions on how to install additional pirated PS4 video games onto the hard drive of this console, as well as a website address to an instructional video on "how to run fake pkg games!" and a website address from which additional unauthorized PS4 video games are available for download to this PS4 console. Compl. ¶ 14; Penge Decl. ¶¶ 9, 10.

### 2. Defendant's PS4 Console No. 2

In June 2018, Defendant—under the handle "blackcloak13"—listed another "jailbroken" PS4

console for sale on eBay.  Defendant advertised this console as a "PlayStation4" with "5.05 firmware plus mod menus plus games."  SIE purchased this PS4 console from Defendant via eBay through an agent.  A package containing a PS4 console, Serial Number MB956801546, was delivered to SIE's agent bearing the following return name and address: "Eric Scales, ███████████████████, Rancho Cucamonga, CA 91730."  Compl. ¶ 16; Leong Decl. ¶ 13, 14 and **Exhibits H** and **I**.

The hard drive of this PS4 console, Serial Number MB956801546, contains unauthorized digital copies of eight PS4 video games, including *God of War; Call of Duty WWII*; *Need for Speed Payback*; *Sniper Elite 4*; *Sniper Ghost Warrior 3*; and *The Surge*. Penge Decl. ¶ 11.  Each of these eight unauthorized copies of PS4 video games contains an unauthorized copy of the PS Program Code. Penge Decl. ¶ 12.

This PS4 console also came with written instructions from Defendant similar to those he supplied with Console 1.  This PS4 console is capable of making digital copies of, and playing, additional pirated copies of PS4 video games through the use of an exploit in the same manner as Defendant's PS4 Console No.1. Compl. ¶ 17; Penge Decl. ¶¶ 14, 15, 16.

### 3.   Other Illegal Conduct

Before and after June 2018, the seller named " blackcloak 13"—the eBay handle used by Defendant—offered for sale on eBay other PS4 consoles with dozens of PS4 video games installed on them.  For instance, in July 2018, the seller "blackcloak13" posted a 5-page eBay advertisement that offered to sell a PS4 console with a "170 GAME COLLECTON" purportedly loaded on its hard drive. In October 2018, the seller "blackcloak13" posted an eBay advertisement that offered to sell a PS4 console that purportedly had 59 PS4 video games on its hard drive.  Leong Decl. ¶ 15 and **Exhibits J** and **K.**

In addition to selling jailbroken PS4 consoles loaded with unauthorized PS4 games on eBay, Defendant advertises his products and services, including "PS3/4 jailbreaks," on a website, http://foxhoundoutfitters.wixsite.com/ps3-jailbreak-mods.  On his website, Defendant touts that he has been "jailbreaking and modding game console[s] since 2006" and advises potential customers that "you can purchase from me on eBay from seller blackcloak13."  On Defendant's website, where he uses the traditional "pirate" symbol of a skull and crossbones, Defendant states that purchasing his

services or products will enable the purchaser to "STOP BUYING GAMES." Compl. ¶¶ 19-21; Leong

Decl. ¶ 16 and **Exhibit L.**

### III. THE COURT MAY PROPERLY ENTER DEFAULT JUDGMENT AGAINST DEFENDANT SCALES AT THIS TIME

Defendant Scales was properly served with the Complaint on November 2, 2018.  He failed to

respond in the time required or at all. Consequently, Defendant's default was entered by the Clerk of

this Court on December 6, 2018 pursuant to Fed.R.Civ.P. 55(a).  Declaration of Monika Pleyer Lee in

Support of SIE's Motion for Default Judgment ("Lee Decl."), ¶¶ 4, 5.

The Court may enter a default judgment where the clerk, under Rule 55(a), has previously

entered the party's default based upon failure to plead or otherwise defend the action.  Fed.R.Civ.P.

55(b); *DR JKL Ltd. v. HPC IT Educ. Ctr*., 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010).

In *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986), the Ninth Circuit outlined the

following factors the Court may consider in determining whether to grant a default judgment: "(1) the

possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency

of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy

underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

After default has been entered, the Court takes all factual allegations in the complaint as true,

except for those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th

Cir.1987).  Fed.R.Civ.P. 54(c) requires that a "default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."

Plaintiff has fully complied with the requirements of Fed.R.Civ.P., Rules 54 and 55, and Local

Rule L.R. 55-1.[1] Lee Decl. ¶¶ 3-9.  As demonstrated below, the *Eitel* factors favor entry of a default

judgment against Defendant Scales as well.

---

[1] L.R. 55-1 requires that an application for a default judgment be accompanied by a declaration including the following information: "(a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if

*(Footnote Continued)*

## IV. APPLICATION OF THE EITEL FACTORS WARRANTS ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANT SCALES

### A.     SIE Would Be Prejudiced if a Default Judgment Were Not Entered

In light of the fact that Defendant has failed to appear in this lawsuit, absent a default judgment in this action, SIE will not be compensated for its losses, nor would SIE have the benefit of an injunction ordering Defendant to refrain from further unlawful conduct.  SIE would be greatly prejudiced. *See, e.g., Landstar Ranger, Inc. v. Parth Enterprises, Inc*., 725 F. Supp. 2d 916 (C.D. Cal. 2010) citing *PepsiCo, Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal 2002) for the proposition that "plaintiff's would have no other recourse for recovery if default judgment was not granted"; *see also Amini Innovation Corp. v. KTY Int'l. Mktg.,* 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) ("If the Court does not enter a default judgment, it will allow Defendant to avoid liability by not responding to Plaintiff's claims.")

Moreover, if this Court were to decline entry of a default judgment against Defendant Scales, it could set a dangerous precedent, allowing the purveyors of pirated PS4 video games and "jailbroken" PS4 consoles to avoid liability by simply not responding to SIE's claims. Such precedent would encourage other third parties to engage in similar violations of SIE's intellectual property rights in the future, resulting in further prejudice to SIE.  The first *Eitel* factor – possible prejudice to plaintiff – weighs heavily in favor of entry of a default judgment.

### B.     The Complaint States Claims Against Defendant for Copyright Infringement and Violation of the DMCA

The second and third *Eitel* factors, involving the substantive merits of the claim and the sufficiency of the complaint, likewise support entry of a default judgment.  They require that a plaintiff's allegations "state a claim upon which [plaintiff] may recover." *DR JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048  (N.D. Cal. 2010), citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

Upon a defendant's default, the factual allegations of the complaint, other than those relating to damages sustained, are deemed admitted. Fed.R.Civ.P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not

required by Fed.R.Civ.P. 55(b)(2).

denied."); *Televideo Sys.,* 826 F.2d at 917-18 citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Here, SIE's Complaint[2] sufficiently states a claim against Defendant for copyright infringement and violation of the DMCA.

### 1.   <u>Copyright Infringement, 17 U.S.C. § 501 *et seq.*</u>

SIE's Complaint pleads the facts that establish Defendant's liability for copyright infringement. Copyright infringement is established by showing "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In its Complaint, SIE has alleged that it owns (or is exclusive licensee to) registered copyrights in the PS Program Code and in the PS4 video games titled *HELLDIVERS*, *Everybody's Golf*, and *God of War* that have been copied onto the hard drives of jailbroken PS4 consoles sold by Defendant without authorization. SIE has also alleged that Defendant, without authorization, copied these video games as well as numerous other video games, each of which contains the copyrighted PS Program Code, unto the "jailbroken" consoles SIE acquired. Compl. ¶¶ 7, 9, 14, 16, 23, 28.

#### a.   <u>SIE's Copyright Registrations</u>

A certificate of registration made before or within five years after publication of the work is prima facie evidence of copyright validity and of the facts stated in the certificate. 17 U.S.C. § 410(c). SIE owns (or is an exclusive licensee to) registrations of copyrights in three of the PS4 video games copied onto the hard drive of the jailbroken PS4 consoles sold by Defendant, and in the PS Program Code that is contained in every PS4 video game.  In particular, as alleged in the Complaint, the following registrations have been issued to SIE or SIEI:

1.  Registration No. PA 2117608 for *HELLDIVERS*; Registration No. PA 2111899 for *Everybody's Golf*; and Registration No. PA 2115052 for *God of War*.

---

[2] In support of this Motion, SIE also submits declarations that contain evidence supporting the allegations of the Complaint.  The declarations are not intended to introduce any new material facts but only to provide additional substantiating evidence.

2.  Registration No. TX 8589872 for the PlayStation Branding and Notices

Software Program ("PS Program Code").

Compl. ¶¶ 7, 9, 23, 28; Leong Decl. ¶¶ 6, 9 and **Exhibits A, B, C, D**.

As alleged in the Complaint, the registered PS Program Code is contained in all PS4 video games, including all games loaded onto the "jailbroken" PS4 consoles sold by Defendant.  Compl. ¶ 28; Penge Decl. ¶¶ 4, 6, 12.

b.      Defendant's Copying

SIE's Complaint establishes Defendant's copying of the PS4 video games protected by the above copyright registrations and of the copyrighted PS Program Code contained in every PS4 video game.  Copying may be established by showing that (1) the infringing party had access to the copyrighted work and (2) the works in question are substantially similar in their protected elements." *Rice,* 330 F.3d at 1174.

The pirated PS4 video games that are copied onto the "jailbroken" PS4 consoles sold by Defendant are not just "substantially similar" to genuine PS4 video games, but they are unauthorized, decrypted copies that are identical to the copyrighted work in the corresponding genuine PS4 video games in that, when played on a "jailbroken" PS4 console, they look and perform in the same way as the genuine, authorized PS4 video games of the same game title.  Penge Decl. ¶¶ 6, 12.  Defendant advertises and describes the games he copied onto the "jailbroken" PS4 consoles by their official game titles, and they appear on the "jailbroken" consoles in the same manner as genuine, authorized PS4 video games of the same title.  Compl. ¶¶ 13, 18; Penge Decl. ¶¶ 7, 13.

"Access" to the PS4 video games is ubiquitous.  Genuine, authorized versions can be purchased online via digital download from SIE or in the form of discs from many sources through the internet or at brick and mortar retail stores.  Leong Decl. ¶ 2.  In addition, Defendant provided instructions with the "jailbroken" PS4 consoles that he sold, which identify where to find unauthorized digital versions of PS4 video games, and explain how to download (*i.e.*, copy) them onto the "jailbroken" consoles sold by Defendant.  Penge Decl. ¶¶ 10, 16.  This demonstrates that Defendant knew how to access and copy the copyrighted PS4 video games and the copyrighted PS Program Code, even though Defendant had no authorization to copy any of these games or to copy the PS Program Code contained in each of them.

14

2. __Violation of the DMCA, 17 U.S.C. § 1201 *et seq*.__

In *MDY Industries, LLC v. Blizzard Entertainment, Inc*., 629 F.3d 928 (9th Cir. 2010), the court engaged in a thorough analysis of sections 1201(a) and (b) of the DMCA and concluded "that section (a) creates a new anticircumvention right distinct from copyright infringement, while section (b) strengthens the traditional prohibition against copyright infringement." *Id*. at 948.  Citing the Senate Judiciary Committee report (S.Rep. No. 105-190, at 12 (1998)), the court confirmed that § 1201(a)(2) "is designed to protect access to a copyrighted work," whereas § 1201(b)(1) "is designed to protect the traditional copyright rights of the copyright owner." *Id*. at 946-47.

Consequently, 17 U.S.C. § 1201(b) "reinforce[s] copyright owners' traditional exclusive rights under § 106 by granting them an additional cause of action against those who traffic in circumventing devices that facilitate infringement."  Its "prohibition is thus aimed at circumventions of measures that protect the copyright itself: it entitles copyright owners to protect their existing exclusive rights under the Copyright Act. Those exclusive rights are reproduction, distribution, public performance, public display, and creation of derivative works."  *Id.* at 944-45.

SIE brings its claim under 17 U.S.C. § 1201(b)(1).  By its terms this section prohibits the marketing or trafficking in devices, products or components primarily designed or produced for the purpose of circumventing "protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof." To "circumvent protection afforded by a technological measure" means "avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure." 17 U.S.C. § 1201(b)(2)(A).  A technological measure "effectively protects a right of a copyright owner" if, "in the ordinary course of its operation," it "prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title." 17 U.S.C. § 1201(b)(2)(B).

In the ordinary course the Technical Protection Measures, or TPMs, intrinsic to the PS4 System effectively protect SIE's copyright rights, including the right to distribute copyrighted PS4 video games that are playable, by preventing unauthorized copies of PS4 video games from being played on genuine PS4 consoles.  Compl. ¶ 11; Penge Decl. ¶ 3.

Defendant's "jailbroken" PS4 consoles are designed to, and do, circumvent these TPMs. Compl. ¶¶ 15, 17; Penge Decl. ¶¶ 6, 8, 12, 14.  The "jailbroken" PS4 consoles that Defendant sells are loaded with unauthorized PS4 video games that cannot be played on genuine PS4 consoles but require the jailbroken consoles that Defendant sells.  By loading the unauthorized PS4 video games onto jailbroken PS4 consoles, Defendant made the unauthorized games playable[3] and thereby created products that circumvent the TPMs installed by SIE.  Compl. ¶¶ 12, 14, 17, 29, 33; Penge Decl. ¶¶ 8, 12.

Each unauthorized PS4 video game, once loaded onto the "jailbroken" PS4 console, is a separate product that circumvents the TPMs that, in the ordinary course, effectively protect SIE's exclusive right to control the distribution of playable digital versions of that particular PS4 video game.  Compl. ¶¶ 29, 33.  For instance, the unauthorized copy of *Everybody's Golf* on Defendant's PS4 Console No.1 is a circumventing product that Defendant created and sold by combining an unauthorized copy of *Everybody's Golf* with Console No. 1.  In this manner, Defendant sold and distributed a playable version of *Everybody's Golf* that avoids and bypasses the TPMs that are designed to protect SIE's exclusive right to control the distribution of digital versions of *Everybody's Golf.* The same is true for each of the other unauthorized PS4 video games loaded on Defendant's PS4 Console Nos. 1 and 2.

As further alleged in the Complaint, Defendant advertises his products (and services) as enabling the purchaser "TO ENJOY ALL GAMES FREE."  Compl. ¶ 13.  The instructions that Defendant provides with the "jailbroken" PS4 consoles he sells explain how the consoles can be used to "run fake pkg[4] games" and how to locate and install additional unauthorized games onto the consoles.  Compl. ¶¶ 13, 14, 17; Penge Decl. ¶¶ 10, 16.

Defendant's declared purpose in selling the "jailbroken" PS4 consoles is to provide a machine that circumvents TPMs installed by SIE and allows the playing – not only of the games loaded onto the consoles – but of additional digital copies of other unauthorized PS4 video games, in direct violation of

---

[3] The capability of a PS4 video game to be played is, of course, essential to making the game useful to the owner.  A copy of a game that is not playable – because the TPMs prevent it from playing on a genuine PS4 console – has no value.  A playable version of a video game is materially different from a version that cannot be played and constitutes a different product.

[4] A "fake pkg" lacks the digital signatures that are required to run on a genuine, non-exploited, non-jailbroken PS4 console.

17 U.S.C. § 1201(b)(1).  Compl. ¶¶ 19, 20, 21; Leong Decl. ¶ 15 and **Exhibit L**.  The "jailbroken" consoles themselves function as circumvention devices that make it possible for purchasers of the consoles to create playable versions of additional pirated PS4 games by finding unauthorized digital copies of such games and loading them onto the jailbroken consoles. Compl. ¶¶ 12, 15, 17; Penge Decl. ¶¶ 9, 15.

### C.   The Amount of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, also favors entry of a default judgment.  By selling, and offering to sell, unauthorized PS4 video games that are installed on "jailbroken" consoles and thereby made playable so as to bypass the TPMs installed by SIE, Defendant has caused SIE to lose potential sales of the genuine versions of these PS4 games. Defendant's failure to appear in this action and SIE's consequent inability to take discovery has prevented SIE from establishing the full extent such losses.

As discussed in more detail below, SIE therefore requests statutory damages for Defendant's violation of the DMCA in a total amount of $16,800 as compensation for losses incurred, as a punishment for Defendant's willful conduct, and as a deterrent to future violations of the DMCA by Defendant and others.  This amount is warranted in light of Defendant's willful infringement and violations of the DMCA, his refusal to appear in this action, and his acknowledged understanding and intent that his products be used to deprive SIE of the opportunity to sell genuine PS4 video games to Defendant's customers by enabling them to play free, unauthorized versions of PS4 video games.  SIE also seeks attorneys' fees and costs in the amount of $3,458.

### D.   No Possibility of a Dispute Concerning Material Facts

There is no information before the Court concerning a possible dispute of material fact. Defendant has not appeared in this action and, upon entry of default, the well-pleaded factual allegations in the Complaint are accepted as true. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed a well-pleaded complaint, the possibility of [a] dispute concerning material facts is remote.").

### E.   Default Was Not the Result of Excusable Neglect

Defendant's default in this matter was not due to excusable neglect. Defendant was served by

substituted service on November 2, 2018.  Lee Decl. ¶ 4 and Proof of Service (ECF # 11).  Defendant failed to answer or otherwise respond.  On December 5, 2018, SIE then served the Request for Entry of Default to the addresses where service of process was effected.  Lee Decl. ¶ 5.  Defendant again failed to appear, and the Clerk entered his default on December 6, 2018.  Lee Decl. ¶ 6.

### F.   The Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiffs' Right to Relief

Any policy in favor of deciding cases on the merits does not outweigh SIE's right to relief in this matter. Defendant had every opportunity to defend himself in this action against SIE's serious allegations. Plaintiff has presented well pled allegations and supporting declarations that demonstrate the merits of SIE's case.  Depriving SIE of judgment because Defendant chose not to defend against this action would not favor a decision on the merits but would condone defendant's refusal to appear and would signal to infringers and sellers of circumvention devices that they can avoid the consequences of their unlawful conduct by simply ignoring the legal process.  At the same time, SIE would be further prejudiced by being deprived of all remedies.

## V.  REMEDIES

In accordance with Fed.R.Civ.P. 54(c), SIE seeks only those remedies requested in the Complaint, consisting of statutory damages, a permanent injunction, and reasonable attorney's fees and costs.

### A.   Permanent Injunction

The Copyright Act provides that a court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  Under 17 U.S.C. § 503(b), the Court may order the destruction of copies found to have been made or used in violation of a copyright owner's rights; 17 U.S.C. 1203(b)(1) and (2) provides the same remedies in the case of violations of the DMCA.  Parties obtaining a permanent injunction ordinarily must satisfy a four-part test: (1) irreparable harm; (2) lack of adequate remedies at law; (3) the balance of hardships weighs in its favor; and (4) the injunction is in the public's interest.  *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).  SIE meets this test.

### 1.   Public Interest

"[T]he public has a compelling interest in protecting copyright owners' marketable rights to

their work and the economic incentive to continue creating" such works.  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (citing *Golan v. Holder*, 565 U.S. 302, 328 (2012)).  "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983).

Consequently, as "a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (citing *Nat'l Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732 (8th Cir. 1986)); *see also Microsoft Corp. v. Nop*, No. Civ. S-07-1276 MCE DAD, 2008 U.S. Dist. LEXIS 18727, at *9-10 (E.D. Cal. March 11, 2008) (holding that a permanent injunction is warranted when there is no reason to believe that the infringing party has or will cease the infringement without an injunction); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003)(same).

SIE has established Defendant Scales's liability and the threat of continuing violations.  *See* section II.B, *supra*.

### 2.  Irreparable Harm and Lack of Adequate Remedies at Law

Defendant's marketing of PS4 consoles preloaded with numerous unauthorized copies of PS4 games that Defendant then sold to the public undermines the value of SIE's copyrights in those games and is detrimental to SIE's goodwill and negotiating leverage with licensees. *See, e.g., Disney Enter's. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017)(finding irreparable harm since VidAngel's "service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees").

Defendant's sales of pirated PS4 games loaded onto "jailbroken" PS4 consoles also directly deprived SIE of the profits it would have earned from the sale of genuine versions of some or all of these PS4 games. *See, e.g., eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1066 (N.D.Cal.2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily

calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief.")

Defendant's refusal to appear in this action is a strong indication that he expects to continue his illegal conduct and further warrants entry of a permanent injunction.  *See, e.g., Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004) (granting permanent injunction as part of default judgment in copyright infringement action because, due to defendant's non-appearance, "there is a threat of continuing violations [and thus] a permanent injunction is warranted")

### 3.   **Balance of Hardships**

The balance of hardships is in SIE's favor since the injunction SIE seeks would only prevent Defendant from engaging in unlawful conduct.  To the extent that such prevention would harm Defendant, this Court should not take it into account.  *See Triad Sys. Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir.1995) (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities"); *see also Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (holding that it was reversible error for a district court to even consider "the fact that an injunction would be devastating to [defendant's] business").

In the Complaint, SIE prays that Defendant and his agents, servants, employees, successor and assigns, and all other persons acting in concert with Defendant be permanently enjoined from:

a.   marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in any products that infringe or contribute to the infringement of SIE's intellectual property rights, including its copyrights in PS4 video games and the PS Program Code, or to participate in or facilitate any such activity;

b.   directly or indirectly infringing, or enabling or contributing to infringement of, any copyright that SIE owns or is the exclusive licensee of, including copyrights in First-Party PS4 games and in the PS Program Code;

c.   marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in – via eBay, the website http://foxhoundoutfitters.wixsite.com/ps3-jailbreak-mods or any other means or channels –any products or services produced or designed to circumvent the

20

technological measures that SIE employs to protect its exclusive copyright rights in or

to PS4 video games and the PS Program Code, including, but not limited to, (1)

"jailbroken" or "modded" PS4 consoles, and (2) jailbreaking or "modding" services;

d. infringing SIE's rights under the Copyright Act, 17 U.S.C. § 501 *et seq*.; and

e. violating SIE's rights under the Digital Millennium Copyright Act, 17 U.S.C. §§

1201 – 1205.

Compl., Prayer § 2. SIE now asks that the default judgment to be entered by this Court include a

permanent injunction with these terms.

### B.   Damages

SIE respectfully asks the Court to award statutory damages of $16,800 for Defendant's violations

of the DMCA[5].  Due to Defendant's default, SIE has been prevented from taking discovery to ascertain

the full extent of Defendant's unlawful acts and, therefore, lacks the data and information to identify

actual damages or Defendant's unlawful profits.  "Statutory damages are particularly appropriate in a

case, such as this one in which [the] defendant has failed to mount any defense or to participate in

discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." *Jackson*,  *supra,*

255 F. Supp. 2d 1at 1101.

A plaintiff suing for violation of the DMCA may, "[a]t any time before final judgment is entered,

… elect to recover an award of statutory damages for each violation of section 1201 in the sum of not

less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or

performance of service, as the court considers just." *See* 17 U.S.C. § 1203(c)(3)(A).

SIE requests statutory damages based on a rate of $800 for each of the two "jailbroken" consoles

sold by Defendant to SIE's agents (*i.e*., $1,600 for these two sold "circumvention devices"), and of $200

for each of the 76 pirated PS4 video games that Defendant combined with, and loaded onto, a

"jailbroken" console (*i.e*., $15,200 for the 76 "circumvention products" that Defendant  sold), for a total

of $16,800.

The rate of $800 per circumvention device previously has been found reasonable in a case

involving devices designed to circumvent the TPMs in the PlayStation®2 ("PS2") console systems.  *See*

---

[5] SIE does not seek damages herein for Defendant's copyright infringement.

*Sony Comput. Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005) (court awarded DMCA statutory damages of $800 per circumvention device consisting of "mod chips" or "HDLoader software" that could be used to modify PS2 consoles so as to allow unauthorized copies of PS2 video games to be made and played on the PS2 console); *accord Sony Comput. Entm't Am., Inc. v. Divineo, Inc.,* 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) (same).  The circumvention devices at issue in *Filipak* and *Divineo* were the functional equivalent of the "jailbroken" consoles Defendant sold to SIE.

Here, Defendant sold and distributed not only "jailbroken" consoles (devices designed to play unauthorized copies of PS4 video games), but also numerous (76) unauthorized digital copies of PS4 video games already loaded onto these consoles and ready to play.  This greatly increased the damage to SIE by making available to Defendant's customers ready-to-play games, each of which directly, and without any further effort by Defendant's customers, circumvents the TPMs that were designed to protect SIE's exclusive right to distribute digital copies of PS4 games in the United States.

Each of the 76 unauthorized PS4 games loaded onto the PS4 consoles sold by Defendant circumvents the TPMs that, in the ordinary course, protect the genuine PS4 game of the same title from unlawful copying and distribution.  Consequently, each game is a separate circumvention product that violates the DMCA and gives rise to a separate statutory damages award.  *See* 17 U.S.C. § 1203(c)(3)(A)("not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service").  SIE requests that the Court award the minimum statutory amount of $200 per PS4 game for each of these separate circumvention products sold by Defendant, for a total of $15,200 for 76 games.

The total amount of statutory damages requested by SIE is $16,800.  This is eminently reasonable, particularly since SIE has not included in its request any damages based on Defendant's July 2018 offer on eBay to sell a jailbroken PS4 console with a "170 game collection" or based on the Defendant's October 2018 offer on eBay to sell a PS4 console with 59 games (*see* Leong Decl. ¶ 15 and **Exhibits J** and **K**), or any other consoles, games or circumvention services that Defendant sold or offered to the public on Defendant's website, on eBay, or otherwise.

Significantly higher amounts of statutory damages are often awarded.  *See, e.g., Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1064 (N.D. Cal. 2010) (using $1,000 statutory damage

multiplier for each of the 470 devices sold, which consisted of "CraigsList AutoPoster Professional," a software program that allowed users to post ads automatically to the craigslist website in violation of craigslist's terms of use, for a total award of $470,000); *see also Craigslist, Inc. v. Kerbel*, 2012 U.S. Dist. LEXIS 108573 *13 (N.D.Cal. Aug. 2, 2012) (damages based on defendant's advertising of at least 1,000 offers of circumvention software on his website multiplied by $200, for a total of $200,000); *Stockwire Research Grp., Inc. v. Lebed,* 577 F. Supp. 2d 1262 (S.D. Fla. 2008) (awarding $200 for each of the 11,786 occasions on which the "Unauthorized Product" created by defendant was viewed on the internet, for a total award of $2,357,200).

Due to Defendant's failure to appear and defend in this action, SIE has been prevented from discovering the full extent of Defendant's DMCA and copyright violations.  The amount SIE now requests is likely significantly below the total actual or statutory damages that would be recoverable had SIE been able to take discovery.

### C.   Attorneys' Fees and Costs

Both the Copyright Act and the DMCA provide for attorneys' fees to be awarded to the prevailing party. *See* 17 U.S.C. § 505 and 17 U.S.C. § 1203(b)(5).  As the prevailing party SIE requests attorneys' fees in the amount of $2,208 pursuant to L.R.55-3. *See* Lee Decl. ¶ 10.  In addition, SIE seeks costs of $1,250 pursuant to Fed.R.Civ.P. 54(d)(1) and L.R. 54-4.  *See* Lee Decl. ¶ 11.

## VI.      CONCLUSION

For the foregoing reasons and in the manner set forth above, the Court should grant SIE's Motion for Entry of Default Judgment against Defendant Scales and enter judgment awarding damages totaling no less than $16,800, the requested injunctive relief, and attorneys' fees and costs totaling $3,458.

Dated: February 22, 2019          LEE LAW OFFICES


                                                  */s/Monika Pleyer Lee*
                                                  Monika Pleyer Lee
                                                  Attorneys for Plaintiff
                                                  Sony Interactive Entertainment LLC