UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-2141 JGB (KKx)** | Date | March 18, 2019 |
|---|---|---|---|
| Title | *Sony Interactive Entertainment LLC v. Eric David Scales* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Phyllis Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Monika Pleyer Lee | None Present |

**Proceedings:     Order GRANTING Plaintiff's Motion for Default Judgment (Dkt. No. 14)**

On February 22, 2019, Plaintiff Sony Interactive Entertainment LLC ("Plaintiff" or "Sony") filed an unopposed motion for default judgment against Defendant Eric David Scales doing business as Blackcloak13 ("Defendant"). ("Motion," Dkt. No. 15.)[1] The Court held a hearing on March 18, 2019. After considering the papers filed in support of the Motion, as well as the oral arguments presented by the parties, the Court GRANTS the Motion.

## I.   BACKGROUND

On October 5, 2018, Sony filed a complaint against Defendant. ("Complaint," Dkt. No. 1.) The Complaint alleges three causes of action: (1) copyright infringement of First-Party Games (17 U.S.C. § 501 et seq.); (2) copyright infringement of the PS Program Code (17 U.S.C. § 501, et seq.); and (3) violation of the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 1201, et seq.).

---

[1] Plaintiff fails to observe the local rules. Local Rule 6-1 provides that a notice of motion shall not be served later than 28 days before the date of hearing. Plaintiff noticed its Motion for hearing on March 18, 2019 but filed its motion on February 22, 2019. This is later than 28 days before the date of hearing. Furthermore, the Motion does not comply with Local Rule 11-3.1.1, requiring 14-point font. Finally, Plaintiff makes no mention of any attempt to meet and confer with Defendant as required by Local Rule 7-3. The Court admonishes Plaintiff to comply with the Local Rules in future filings.

Sony markets and sells the PlayStation 4 ("PS4") and PS4 compatible videogames.  (Id. ¶ 6.)  Sony and its Tokyo-based sister company Sony Interactive Entertainment Inc. ("SIEI") produce, publish, and distribute numerous PS4-compatible video games which enjoy copyright protection.  (Id. ¶ 7.)  For example, Sony owns copyrights in God of War and Helldivers.  ("Ex. A," Dkt. No. 16; "Ex. B," Dkt. No. 16.)  Sony is also the exclusive licensee in the United States of SIEI's copyright in Everybody's Golf and is authorized by SIEI to sue for infringement of those copyrights.  ("Ex C," Dkt. No. 16.)[2]  Sony also authorizes and licenses certain third-party companies to publish PS4-compatible games ("Third-Party PS4 games").  (Compl. ¶ 8.)  All First-Party and Third-Party PS4 games include a copyrighted computer code, for which SIEI enjoys copyright protection ("PS Program Code").  (Id. ¶ 9; "Ex. D," Dkt. No. 16.)  SIEI granted Sony the exclusive right to use, license, and bring suit for infringement of its copyrights in the PS Program Code in the United States.  (Compl. ¶ 9.)  To guard against unauthorized copying ("pirating") of Sony and SIEI's software, PS4 consoles include technological protection measures ("TPMs") in their system software.  (Id. ¶¶ 10-11.)  The TPMs prevent a PS4 from playing pirated copies of video games.  (Id. ¶ 11.)

Defendant has marketed, sold, and distributed "jailbroken" (or "modded") PS4 consoles that (1) contain on their internal hard drives pirated digital copies of First-Party and Third-Party PS4 games, and (2) are primarily modded for, and marketed for use in, circumventing the TPMs that prevent a console from playing pirated games.  (Id. ¶ 12.)  In April 2018, Defendant, using the eBay handle "blackcloak13," advertised a jailbroken PS4 console as a "NEW JAILBROKEN MODDED PS4 console PLUS 63 full games plus 1."  (Id. ¶ 13; "Ex. E," Dkt. No. 16.)  The blackcloak13 handle belongs to Defendant.  ("Ex. G," Dkt. No. 16.)  In the same advertisement, Defendant noted the console was "FULLY JAILBROKEN/MODDED" and that it comes with custom printed detailed instructions that would enable the purchaser to play any game he or she wants.  (Ex. E.)  A Sony agent purchased this particular jailbroken PS4 console ("Console 1").  (Compl. ¶ 14.)  The package with the console contained a return address listing Defendant's name and address.  ("Ex. F," Dkt. No. 16.)  Timothy Penge, a senior software security engineer at Sony, inspected Console 1 and determined it contained 68 pirated PS4 video games, including Helldivers, Everybody's Golf, Frozen Free Fall: Snowball Fight, Guns, Gore & Cannoli, and others. ("Penge Declaration," Dkt. No. 17 ¶¶ 5-7.)  Penge determined the modification enabled Console 1's user to run an "exploit" software code that circumvents the TPMs designed to prevent pirated pre-installed games from running.  (Id. ¶ 8.)  Penge also determined that the modification to Console 1 allows a user to download pirated copies of games.  (Id. ¶ 9.)  The Console 1 package came with typewritten instructions not included with genuine, unmodified PS4s that provide directions on how to install additional pirated PS4 games.  (Id. ¶ 10.)

In June 2018, Defendant used the blackcloak13 handle to list another console for sale on eBay and advertised the console as "5.05 firmware plus mod menus plus games."  (Compl. ¶ 16; "Ex. H," Dkt. No. 16.)  A Sony agent purchased this particular console ("Console 2").  (Compl.

---

[2] PS4-compatible video games for which Sony owns or for which Sony is the exclusive licensee in the United States will be referred to as "First-Party PS4 games."

¶ 16.)  The packaging for Console 2 contained a return address listing Defendant's name and address.  ("Ex. I," Dkt. No. 16.)  Penge inspected Console 2 and concluded the console contained pirated PS4 video games and that Console 2 was modified in the same manner as Console 1.  (Compare Penge Decl. ¶¶ 5-10 with ¶¶ 11-16.)  Console 2 also came with the same instructions as to how a purchaser can install additional pirated PS4 games.  (Id. ¶ 16.)

Defendant's April 2018 listing highlighted his website.  (Ex. E.)  The website advertised Defendant's products and services, which include "PS3/4 jailbreaks."  ("Ex L," Dkt. No. 16.)  The website boasts that Defendant has been "jailbreaking and modding game consoles since 2006."  (Id.)  The website states: "Why keep giving money to these big companies for games[?] They only take from you and give nothing back[.]  Well the time has come to stand up against them and take back what your [sic] owed.  Don't limit yourself when you can have it all."  (Id.) Defendant writes "STOP BUYING GAMES" and notes that with his products and services "you will be able to [d]ownload and copy any game[.]"  (Id.)  The website advises potential customers that they "can purchase from [him] on eBay from seller blackcloak13."  (Id.)

On February 22, 2019, Sony moved for default judgment.  Sony requests $16,800 damages for Defendant's violations of the DMCA,[3] $2,208 in attorneys' fees, $1,250 in costs, and a permanent injunction.  (Mot. at 20-21, 23.)  Sony requests Defendant be permanently enjoined from:

(a) marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in any products that infringe or contribute to the infringement of Sony's intellectual property rights, including its copyrights in PS4 video games and the PS Program Code, or to participate in or facilitate any such activity;

(b) directly or indirectly infringing, or enabling or contributing to infringement of, any copyright that Sony owns or is the exclusive licensee of, including copyrights in First-Party PS4 games and in the PS Program Code;

(c) marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in – via eBay, the website http://foxhoundoutfitters.wixsite.com/ps3-jailbreak-mods or any other means or channels – any products or services produced or designed to circumvent technological measures that Sony employs to protect its exclusive copyright rights in or to PS4 video games and the PS Program Code, including but not limited to (1) "jailbroken" or "modded" PS4 consoles, and (2) jailbreaking or "modding" services;

(d) infringing Sony's rights under the Copyright Act, 17 U.S.C. § 501, et seq.; and

---

[3] Sony does not seek damages for Defendant's copyright infringement.  (Mot. at 21 n.5.)

(e) violating Sony's rights under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205.

(Id. at 20-21.)  Defendant did not file an opposition.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court.  Per Local Rule 55-1, an application to the Court for default judgment must be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and include the following:

(a) when and against what party the default was entered;
(b) the identification of the pleading to which default was entered;
(c) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
(d) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and
(e) that notice has been served on the defaulting party, if required by F.R.C.P 55(b)(2).

L.R. 55-1.

Whether to enter a default judgment is within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092–93 (9th Cir. 1980).  In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471–72 ("Eitel factors").  Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven.  TeleVideo Sys. Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of his damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing.  Fed. R. Civ. Pro. 55(b)(2).  Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. Pro. 54(c).

///

Initials of Deputy Clerk MG
Time:  00:05

### III.   DISCUSSION

Sony moves this Court to enter default judgment against Defendant, seeking injunctive relief as well as monetary damages.  (Mot. at 18-23.)  In order for default judgment to be entered in its favor, Sony must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in their favor.  The Court evaluates these factors below.

#### A.  Procedural Requirements

Sony has satisfied the procedural requirements for entry of default judgment by the Court.  Under Federal Rule of Civil Procedure 55, Sony did not petition for entry of default judgment until after the Clerk entered default against Defendant.  (Dkt. No. 13.)  Additionally, Sony's Motion and an accompanying declaration set forth the information required by the Local Rules of this Court.  ("Lee Declaration," ¶¶ 6, 8-9.)  Sony's counsel represents that notice of this Motion was served by mail to Defendant.  (Id. ¶ 9.)

#### B.  Eitel Factors

##### 1.   Possibility of prejudice to plaintiff

Sony would suffer prejudice if the Court does not enter default judgment.  Because Defendant has not appeared in this action, a default judgment is the only means by which Sony may recover.  Absent a default judgment by this Court, Defendant will have avoided liability simply by not responding to Sony's action.  Therefore, this factor weighs in favor of default judgment.  Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

##### 2.   Substantive merits of plaintiff's claims

The second and third Eitel factors concern the merits of Sony's substantive claims, and the sufficiency of the complaint.  Eitel, 782 F.2d at 1471-72.  "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (internal citation omitted).  Here, Sony asserts the following claims: (1) copyright infringement of First-Party Games (17 U.S.C. § 501 et seq.); (2) copyright infringement of PS Program Code (17 U.S.C. § 501, et seq.); and (3) violation of the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 1201, et seq.).

Sony adequately states a claim for copyright infringement of First-Party games as well as the PS Program Code.  To prevail on these first two claims, Sony must prove (1) it owns a valid copyright, and (2) that Defendant copied original, constituent elements of the copyrighted work. Rice v. Fox Broad. Co., 330 F.3d 1170, 1174 (9th Cir. 2003) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).  A certificate of registration made before a work's

publication, or within five years after the work's publication, is prima facie evidence of copyright validity.  17 U.S.C. § 410(c).  Here, Sony properly alleges the ownership, or exclusive license to, registered copyrights in the following video games: Helldivers, Everybody's Golf, and God of War.  (Compl. ¶ 7; see also Ex. A, Ex. B, Ex. C.)  Sony also alleges it is the exclusive licensee in the United States, with the right to bring suit for infringement, of SIEI's registered copyright in the PS Program Code.  (Compl. ¶ 9; see also Ex. D.)  The PS Program Code is contained in all PS4 video games, including games loaded onto the jailbroken PS4 consoles Defendant sold.  (Compl. ¶ 28; Penge Decl. ¶¶ 4, 6, 12.)  Sony may establish unauthorized copying by showing Defendant had access to the copyrighted works and that the works in question are substantially similar in their protected elements.  Rice, 330 F.3d at 1174.  Here, access to the copyrighted video games, each of which contains the PS Program Code, is widespread, as authorized versions of the games are available via disk or digital download.  ("Leong Declaration," Dkt. No. 2.)  Furthermore, Defendant's own instructions to his customers identifies unauthorized digital versions of the games.  (Penge Decl. ¶¶ 10, 16.)  Sony provides evidence that the video games loaded onto Console 1 and Console 2 are unauthorized, decrypted copies identical to the copyrighted works.  (Penge Decl. ¶¶ 6, 12.)  Defendant advertises these games by their Sony-given titles.  (Compl. ¶ 13.)  Thus, Sony adequately pleads both causes of action for copyright infringement.

Sony also states a claim for a violation of the DMCA's anti-trafficking provision.  "Section 1201(b)'s prohibition is thus aimed at circumventions of measures that protect the copyright itself: it entitles copyright owners to protect their existing exclusive rights under the Copyright Act."  MDY Indus., LLC v. Blizzard Entm't, 629 F.3d 928, 948 (9th Cir. 2010).  Thus, Section 1201(b) "prohibits trafficking in technologies that circumvent technological measures that effectively protect 'a right of a copyright owner.'"  Id. at 944.  Here, the PS4 consoles are equipped with TPMs designed to protect Sony's copyrights by blocking unauthorized PS4 games from being played on genuine PS4 consoles.  (Compl. ¶ 11; Penge Decl. ¶ 3.)  Defendant's jailbroken consoles are designed to circumvent these TPMs.  (Compl. ¶¶ 15, 17; Penge Decl. ¶¶ 6, 8, 12, 14.)  Console 1 was modified to enable its user to run an exploit code that circumvents the TPMs.  (Penge Decl. ¶ 8.)  The modification also allows Console 1's user to download pirated copies of games.  (Id. ¶ 9.)  The package containing Console 1 included typewritten instructions not accompanying genuine, unmodified PS4s, and provide directions on how to install additional pirated PS4 games.  (Id. ¶ 10.)  Console 2 was modified in the same manner as Console 1 and also included instructions as to how to install additional pirated games.  (Compare Penge Decl. ¶¶ 5-10 with ¶¶ 11-16.)  Thus, Sony has adequately stated a claim for a violation of the DMCA's anti-trafficking provision.

Sony has adequately pled its claims against Defendant.  Because default has already been entered, the Court must accept all well-pleaded allegations of Sony's Complaint as true.  See TeleVideo Systems, 826 F.2d at 917 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true.")  Accordingly, the second and third factors also weigh in favor of default judgment.

///

### 3.  Sum of money at stake

The fourth <u>Eitel</u> factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct.  <u>PepsiCo</u>, 238 F. Supp. 2d at 1176.  Sony seeks a total monetary judgment of $20,258: $16,800 in statutory damages for violation of the DMCA, $2,208 in attorneys' fees, and $1,250 in costs.  (<u>See</u> Mot. at 20-21, 23.)  Sony does not seek damages for Defendant's copyright infringement.  (<u>Id.</u> at 21 n.5.)  Here, Defendant sold at least two jailbroken PS4s with exploit codes to circumvent the TPMs.  He also offered for sale more of these jailbroken consoles and advertised his jailbreaking services.  Defendant touts that his experience making such modifications dates back to 2006.  The DMCA authorizes plaintiffs to recover statutory damages for each violation of Section 1201 "in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just."  17 U.S.C. § 1203(c)(3).

The Court is persuaded that $16,800 is an appropriate request for statutory damages in this case.  Sony seeks $800 in statutory damages for each Console 1 and Console 2.  (Mot. at 21.)  Sony also seeks $200 for each of the 76 pre-installed pirated video games.  (<u>Id.</u>)  Sony contends the 76 unauthorized copies of the PS4 video games constitute "circumvention products" once loaded onto a jailbroken console.  (Mot. at 16.)  The modified consoles are properly characterized as circumvention products, as they are altered in such a way that enables their users to run exploit codes circumventing the TPMs blocking pirated pre-installed games from running.  (<u>See</u> Penge Decl. ¶ 8.)  Accordingly, damages for these offending products are proper.  Even though Sony provides no citation to support its contention that the unauthorized game copies are also circumvention products, the Court is persuaded that the unauthorized game copies qualify as circumvention products.  Sony explains that Defendant's modified consoles "are loaded with unauthorized PS4 video games that cannot be played on genuine PS4 consoles but require the jailbroken consoles that Defendant sells."  (Mot. at 16.)  And the modified consoles run exploit codes to circumvent the TPMs.  (Compl. ¶ 15.)  Thus, the unauthorized copies are useless unless they are played on a modified console because the PS Program Code would render them unplayable.  Accordingly, the unauthorized game copies are a necessary part of any circumvention effort.  DMCA statutory damages for the 76 unauthorized copies are appropriate.

Sony may seek a maximum recovery of $390,000 in statutory damages for DMCA violations concerning the two modified consoles as well as the 76 pre-loaded unauthorized game copies.  Accordingly, the sum of money at stake is appropriate, as Sony requests $16,800 in statutory damages. This factor weighs in favor of granting the Motion.

### 4.  Possibility of dispute concerning material facts

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages.  <u>TeleVideo</u>, 826 F.2d at 917; <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment [sic], there is no likelihood that any genuine issue of material fact exists.").  Because Defendant has not appeared in this action or

---

asserted any defenses, it is unlikely that disputes as to material facts will arise.  Accordingly, this factor favors default judgment.

### 5.   Whether default was due to excusable neglect

Under the sixth factor, the Court must consider whether a defendant's default may have been due to excusable neglect.  <u>Eitel</u>, 782 F.2d at 1472.  This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action.  <u>Wecosign, Inc. v. IFG Holdings, Inc.</u>, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan, 23, 2012).  Here, Sony properly served Defendant with the summons and Complaint on November 2, 2018.  (Dkt. No. 11.)  Accordingly, the Court concludes Defendant's default was not the product of excusable neglect.  This factor favors entry of default judgment.

### 6.   Policy favoring decision on the merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."  <u>Eitel</u>, 782 F.2d at 1472 (citing <u>Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985)).  However, where a defendant fails to appear and respond, default judgment is appropriate.  <u>Wecosign,</u> 845 F. Supp. 2d at 1083.  Here, Defendant's failure to appear or defend against this action makes a decision on the merits impracticable.  Therefore, this factor weighs in favor of default judgment.

On balance, the <u>Eitel</u> factors weigh in favor of default judgment against Defendant.  Thus, the Court GRANTS the Motion for default judgment.

## C.   Requested Relief

Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  A plaintiff must "prove up" the amount of damages.  <u>Aifang v. Velocity VIII, L.P.</u>, 2016 WL 5420641, at *7 (C.D. Cal. Sept. 26, 2016).  Sony seeks $16,800 in statutory damages for Defendant's violation of the DMCA, $2,208 in attorneys' fees, $1,250 in costs, and a permanent injunction.  (Mot. at 20-21, 23.)

### 1.   Monetary relief

A plaintiff may recover, in lieu of proven damages, statutory damages for violations of the DMCA.  17 U.S.C. § 1203(c).  Statutory damages under this section are available in the amount not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.  <u>Id.</u> § 1203(c)(3)(A).  Sony seeks $800 in statutory damages for each of the two modified consoles and $200 in statutory damages for each of the 76 unauthorized game copies pre-installed on the consoles.  (Mot. at 21.)

The statute does not provide courts with specific guidelines to determine an appropriate award of statutory damages.  District courts have wide discretion in determining the amount of

statutory damages to be awarded, constrained by the specified maximum and minimum. Munwha Broad. Corp. v. Create New Tech. Co. Ltd., 2015 WL 12747909, *5 (C.D. Cal. Sep. 2, 2015) (citing Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990)).  Here, Sony requests $800 for each of the modified consoles.  This is well below the $2,500 maximum per device.  Sony also seeks the statutory minimum, $200, for each offending pre-loaded unauthorized game.  This request is reasonable, as it is the statutory minimum the Court is permitted to award for the DMCA violations at issue.  Given Defendant's blatant disregard for Sony's copyrights and his long history of jailbreaking PlayStations, the Court finds the request of $800 per console and $200 per pre-loaded unauthorized game to be reasonable.  (See Ex. L.) Accordingly, the Court awards $16,800 in statutory damages.

### 2.  Attorneys' fees and costs

Sony seeks $2,208 in attorneys' fees.  (Mot. at 23.)  For judgments greater than $10,000 but less than $50,000, Local Rule 55-3 permits an award of attorneys' fees calculated as $1,200 plus 6% of the judgment amount over $10,000, where the applicable statute provides for a recovery of reasonable attorneys' fees.  The DMCA provides that a court may award attorneys' fees to the prevailing party.  17 U.S.C. § 1203(b)(5).  Here, the Court awards statutory damages in the amount of $16,800.  Thus, under Local Rule 55-3, Sony may recover $408 (6% of $6,800) in addition to the base award of $1,200.[4]  The Court awards $1,608 to Sony in attorneys' fees.

Sony also incurred $1,250 in costs related to filing its Complaint and serving Defendant. (See Lee Decl. ¶ 11.)  The filing fee was $400, and the cost of service was $850.  (Id.; see also Dkt. No. 11.)  The Court awards Sony costs in the amount of $1,250.

### 3.  Injunctive Relief

The DMCA gives the Court power to grant injunctions "on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free speech or the press protected under the 1st amendment to the Constitution."  17 U.S.C. § 1203(b)(1).  As discussed above, Sony has shown it is entitled to judgment on its DMCA claim and each of its copyright infringement claims.  For a court to enter a permanent injunction, a plaintiff must demonstrate (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favor the equitable remedy; and (4) an injunction will advance the public interest.  eBay, Inc. v. MercExchange, 547 U.S. 388, 391-92 (2006).

The Court finds Sony has made the requisite showing for the entry of a permanent injunction.  First, there would be irreparable injury to Sony if an injunction is not granted. Defendant's copyright infringements and DMCA violations undermine the value of Sony's

---

[4] The Court notes that the calculation of attorneys' fees in the Lee Declaration are incorrect.  Counsel calculates 6% of $6,800 to be $1,008.  (Lee Decl. ¶ 10.) This includes an excess $600 not contemplated by the schedule of fees in Local Rule 55-3.  The Court cannot award this extra $600.

copyrights in its games and injures Sony's goodwill with licensees, lessening its negotiating leverage.  See Disney Enter's v. VidAngel, Inc., 869 F.3d 848, 866 (9th Cir. 2017).  Additionally, the Court finds Defendant's infringing conduct is likely to continue.  Defendant touts the long-enduring nature of his jailbreaking services. (Ex. L.)  Defendant's website further indicates one motivation for this infringing conduct is to "stand up against" the big game companies.  (Id.)  Finally, Defendant's failure to appear in defending this action indicates a threat of continuing violations.  See Warner Bros. Entm't Inc. v. Caridi, 346 F. Supp. 2d, 1068, 1073 (C.D. Cal. 2004).  These factors convince the Court there is a threat of continued violation.

Second, there is no adequate remedy at law to address this irreparable harm.  The analysis for this factor "inevitably overlaps with that of first[.]"  Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) (citation omitted).  Sony has shown it would suffer irreparable injury without an injunction, and the Court agrees money alone is not an adequate remedy.  Furthermore, due to Defendant's failure to defend himself in this action, Sony has been unable to determine the full extent of its damages.  See Blizzard Entm't, Inc. v. Bossland GmBH, 2017 WL 7806600, *8 (C.D. Cal. Mar. 31, 2017).

Third, the balance of hardships favors Sony because an injunction will only bar Defendant from continuing to engage in unlawful activity.  See id.  Finally, enforcing copyright protection serves the public interest.  See Perfect 10 v. Google, Inc., 416 F. Supp. 828, 859 (C.D. Cal. 2006), overruled on other grounds, Perfect 10 v. Amazon.com, Inc., 487 F. 3d 701 (9th Cir. 2007).  The Court therefore finds that issuing a permanent injunction is appropriate.

The Court must also determine the appropriate scope of the injunction.  An injunction "must be narrowly tailored to affect only those persons over which it has power and to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law."  Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) (internal quotations omitted).  Sony requests Defendant be permanently enjoined from:

(1)  marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in any products that infringe or contribute to the infringement of Sony's intellectual property rights, including its copyrights in PS4 video games and the PS Program Code, or to participate in or facilitate any such activity;

(2)  directly or indirectly infringing, or enabling or contributing to infringement of, any copyright that Sony owns or is the exclusive licensee of, including copyrights in First-Party PS4 games and in the PS Program Code;

(3)  marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in – via eBay, the website http://foxhoundoutfitters.wixsite.com/ps3-jailbreak-mods or any other means or channels – any products or services produced or designed to circumvent technological measures that Sony employs to protect its exclusive copyright rights in

or to PS4 video games and the PS Program Code, including but not limited to (1) "jailbroken" or "modded" PS4 consoles, and (2) jailbreaking or "modding" services;

(4) infringing Sony's rights under the Copyright Act, 17 U.S.C. § 501, et seq.; and

(5) violating Sony's rights under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205.

(Mot. at 20-21.)

The Court finds that parts (1), (2), and (3) of the requested relief are not overbroad. The core dispute in this lawsuit, as alleged in the Complaint and restated in Sony's Motion, arises from Defendant's practice of jailbreaking PS4 consoles so that purchasers can play unauthorized copies of games. Defendant pre-installs many of these games and provides instructions on how to acquire and use unauthorized copies of additional games. Thus, the requested relief permissibly enjoins future copyright infringements and DMCA violations associated with Defendant's jailbreaking products and services.

However, parts (4) and (5) of Sony's requested injunction would enjoin future copyright infringement and DMCA violations unrelated to those alleged in the Complaint. These elements of the proposed injunction are thus overbroad, as "blanket injunctions to obey the law are disfavored." Grokster, 518 F. Supp. 2d at 1226 (quoting Mulcahy v. Cheetah Learning LLC, 386 F.3d 849, 852 n. 1 (8th Cir.2004)). Accordingly, the Court will GRANT IN PART and DENY IN PART Sony's request for the entry of a permanent injunction. The Court grants parts (1), (2), and (3) of the requested injunction and denies part (4) and (5).

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS** Sony's Motion for Default Judgment. Judgment shall be entered as follows:

1. Sony is **AWARDED** $16,800 in statutory damages, $1,608 in attorneys' fees, and $1,250 in costs.

2. Defendant and his agents, servant, employees, successors and assigns, and all persons acting in concert with Defendant are **ENJOINED** from marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in any products that infringe or contribute to the infringement of Sony's intellectual property rights, including its copyrights in PS4 video games and the PS Program Code, or to participate in or facilitate any such activity.

3.  Defendant and his agents, servant, employees, successors and assigns, and all persons acting in concert with Defendant are **ENJOINED** from directly or indirectly infringing, or enabling or contributing to infringement of, any copyright that Sony owns or is the exclusive licensee of, including copyrights in First-Party PS4 games and in the PS Program Code.

4.  Defendant and his agents, servant, employees, successors and assigns, and all persons acting in concert with Defendant are **ENJOINED** from marketing, offering, selling, transferring, advertising, promoting, developing, manufacturing, importing, providing or otherwise trafficking in – via eBay, the website http://foxhoundoutfitters.wixsite.com/ps3-jailbreak-mods or any other means or channels – any products or services produced or designed to circumvent technological measures that Sony employs to protect its exclusive copyright rights in or to PS4 video games and the PS Program Code, including but not limited to (1) "jailbroken" or "modded" PS4 consoles, and (2) jailbreaking or "modding" services.

5.  Sony is **ORDERED** to mail or personally serve a copy of this order and the judgment concurrently filed therewith to Defendant.  Sony shall file Proof of Service with the Court within ten days of the date of this Order

**IT IS SO ORDERED.**